IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

         Plaintiff,

v.                                 Case No. 2:18-cv-00320

HUTCH'S WRECKER SERVICE, LLC, and
A.D. TRANSPORT EXPRESS, INC.,

         Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, American Alternative Insurance Corporation ("AAIC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants, Hutch's Wrecker Service, LLC ("Hutch's") and A.D. Transport Express, Inc. ("ADT"), alleges as follows:

**NATURE OF THE CASE**

1. This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding the rights and obligations under a liability policy that AAIC issued to Hutch's. In particular, AAIC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to Hutch's alleged liability in an underlying civil lawsuit pending in the Circuit Court of Fayette County, West Virginia, styled *A.D. Transport Express, Inc. v. Hutch's Wrecker Service, LLC*, Case No. 17-C-270 (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2. AAIC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Princeton, New Jersey, and is authorized to transact the business of insurance within the State of West Virginia.

3. Upon information and belief, Hutch's is a West Virginia limited liability company with its principal place of business in Handley, Kanawha County, West Virginia. Upon information and belief, Hutch's members, James Black, Jack D. Hutchinson, and Timothy E. Hutchinson, are all West Virginia residents.

4. Upon information and belief, ADT is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Canton, Michigan. AAIC seeks no separate relief or judgment against ADT and, rather, seeks only to bind such entity to any judgment rendered herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as AAIC seeks a declaration of its rights and duties under the insurance policy at issue. Jurisdiction is also conferred by 28 U.S.C. § 1332(a) because complete diversity exists between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district, and the Underlying Lawsuit is pending within this district. In addition, Hutch's and ADT have sufficient minimum contacts with this District to confer personal jurisdiction over those entities in this Court.

## THE UNDERLYING LAWSUIT

7. On or about August 22, 2017, ADT filed a Complaint in the Circuit Court of Fayette County, West Virginia, styled *A.D. Transport Express, Inc. v. Hutch's Wrecker Service, LLC*, Case No. 17-C-270. (A true and correct copy of ADT's operative First Amended Complaint, filed September 27, 2017, is attached hereto as Exhibit 1, without exhibits.)

8. In the First Amended Complaint, ADT alleges that, on September 9, 2015 at approximately 9:30 p.m., Matthew Jonas ("Jonas") was driving a 2015 Freightliner tractor and trailer owned by ADT on Interstate I-79 in Fayette County, West Virginia.

9. ADT alleges that, on September 9, 2015, it was engaged in the haulage of goods and materials from South Carolina to Michigan, and that such goods were valued at approximately $314,939.52.

10. ADT alleges that, on September 9, 2015, Jonas lost control while operating ADT's tractor and trailer, causing the tractor and trailer to strike a guardrail, to continue through the guardrail, and to traverse over a short a short hill before coming to a rest approximately 75 yards from the roadway.

11. ADT alleges that the truck rolled over one time and the top of the trailer was torn open.

12. ADT alleges that Jonas contacted the West Virginia State Police and ADT regarding the accident, and either the state police or West Virginia Parkways Commission placed a call to Hutch's to recover the tractor and trailer.

13. ADT alleges that Hutch's arrived at the scene of the accident involving ADT's tractor and trailer within 15 to 20 minutes after the accident.

14. ADT alleges that Hutch's did not recover the tractor or trailer on September 9, 2015, and the Plaintiff's cargo remained in the trailer unprotected from the weather elements.

15. ADT alleges that on the following day, September 10, 2015, Gary Percy, President of ADT, discussed the recovery of the tractor, trailer, and cargo with Timothy Hutchinson, a co-owner of Hutch's.

16. During the conversation, Percy and Hutchinson allegedly agreed that Hutch's would recover the tractor and trailer by lifting/pulling the tractor and trailer back to the roadway, thus allowing for recovery of the cargo. Percy allegedly told Hutchinson that ADT would provide trucks so that the cargo could be offloaded from the trailer and then continue on for delivery.

17. ADT alleges that, despite the aforementioned conversation, Hutch's chose to leave the scene of the accident, and ADT's cargo remained in the trailer unprotected from the weather elements.

18. ADT alleges that, on September 11, 2015, Hutch's arrived on the scene to begin to recover ADT's tractor, trailer, and cargo, but rather than following the agreed-upon plan to remove the property through lifting/pulling the tractor back to the roadway, Hutch's decided to utilize a bulldozer and excavator to "roll" the tractor several hundred feet down an embankment to a nearby road.

19. ADT alleges that the resulting "roll" of the tractor trailer caused the spillage of the cargo onto the hillside and destruction of the tractor and trailer.

20. ADT alleges that Hutch's did not return to the scene of the accident on September 12 or 13, 2015.

21. ADT alleges that, on September 14, 2015, Hutch's returned to the scene of ADT's accident and completed its recovery of the tractor, trailer, and cargo.

22. ADT alleges that the tractor, trailer, and cargo were declared a total loss thereafter.

23. The Underlying Lawsuit is set forth in one cause of action (gross negligence) against Hutch's, and ADT seeks a judgment against Hutch's for damages caused by Hutch's, lost business profits, lost goodwill of ADT, aggravation and inconvenience, punitive damages, and other incurred damages.

## AAIC'S PRELIMINARY CLAIMS-HANDLING

24. AAIC received notice of the Underlying Lawsuit on or about September 8, 2017.

25. On October 4, 2017, AAIC, through its third-party claims administrator, Network Adjusters, Inc., sent Hutch's a letter agreeing to provide Hutch's with a defense in the Underlying Lawsuit subject to a complete and ongoing reservation of rights.

26. On December 19, 2017, AAIC, through its third-party claims administrator, Network Adjusters, Inc., sent Hutch's a letter supplementing its coverage position in light of the filing of a First Amended Complaint and other recent developments, and further reserving its rights under the policy.

27. An actual, present, and justiciable controversy has arisen and now exists between AAIC and Hutch's regarding their respective rights, duties, and obligations under the subject AAIC policy, including whether AAIC has any defense or indemnity obligations thereunder based on the facts alleged in the First Amended Complaint.

## THE AAIC POLICY

28. AAIC issued Policy No. H7A2CM0000478-00 to Hutch's for the policy period January 1, 2015 to January 1, 2016, with cancellation effective September 13, 2015 at 12:01 a.m. ET (the "AAIC Policy"). (A true and correct copy of the AAIC Policy is attached hereto as Exhibit 2.)

29. The AAIC Policy provides commercial inland marine ("CIM") coverage under Form IM 00 06 06 11 (On Hook and Cargo Legal Liability Coverage) with variable liability limits based on covered vehicles, and commercial general liability ("CGL") coverage under ISO Form CG 00 01 04 13 with limits of $1 million each occurrence and $3 million general aggregate.

30. The Insuring Agreement of the CIM coverage part provides the following, in relevant part:

> **A. Coverage**
>
> We will pay those sums that you become legally obligated to pay for loss to Covered Property caused by a Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this coverage form, means property of others that you have accepted for transportation while being shipped in or on a vehicle shown in the Schedule of Covered Vehicles.
>
> We only cover property:
>
> a. **While** in your custody as the carrier until the property is delivered to its destination; or
> b. **When** loaded or unloaded at a facility (terminal, warehouse or other storage area) for up to 72 hours (excluding Sundays and holidays).
>
> If the property is not delivered, we cover the return of the property to you.

\* \* \*

31. The insurance under the CIM coverage part does not apply to, among other things:

> 2. Your liability for loss or damage caused by or resulting from any of the following:
>
>> a. Improper packing or stowage, or rough handling.
>
> \* \* \*
>
>> d. Unauthorized instructions to transfer property to any person or to any place.

32. The Insuring Agreement of Coverage A under the CGL coverage part provides the following, in relevant part:

> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>>
>>> **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and
>>>
>>> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.
>
> \* \* \*

33. The insurance under Coverage A of the CGL coverage part does not apply, in relevant part, to:

> **j.** **Damage to Property**
>
> "Property damage" to:
>
> \* \* \*
>
> **(4)** Personal property in the care custody or control of the insured[.]

34. The term "occurrence" is defined in the CGL coverage part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**COUNT I – DECLARATORY RELIEF**
**(No Coverage under the CIM Coverage Part)**

35. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

36. Neither the bulldozer nor the excavator that Hutch's allegedly utilized in an attempt to recover the overturned tractor, trailer, and cargo is listed in the Schedule of Covered Vehicles which, standing alone, negates coverage under the CIM coverage part.

37. Even if the bulldozer and/or excavator were covered vehicles, the tractor, trailer, and cargo were never shipped in or on such vehicles, nor were they provided to Hutch's for transportation or shipment.

38. Moreover, even if the insuring agreement were satisfied by the underlying allegations or evidence, the insurance under the CIM coverage part does not apply to Hutch's liability for loss or damage caused by or resulting from, among other things, "improper packing or stowage, or rough handling" and "unauthorized instructions to transfer property to any person or to any place."

39. To the extent the damage to the tractor, trailer, and cargo arose out of Hutch's improper packing or stowage, rough handling, or unauthorized instructions to transfer property to any person or to any place, coverage is barred under the CIM coverage part.

40. AAIC has no duty to defend of indemnify Hutch's in connection with the Underlying Lawsuit under the CIM coverage part on one or more of the above-stated grounds.

## COUNT II – DECLARATORY RELIEF
### (No "Occurrence" as Defined in the CGL Coverage Part)

41. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

42. In order to trigger coverage under Coverage A of the CGL coverage part, ADT must seek damages because of "bodily injury" or "property damage" caused by an "occurrence."

43. The CGL coverage part defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

44. In the First Amended Complaint, ADT alleges that Hutch's decisions to leave the scene of the accident without attempting to recover the tractor, trailer, and cargo, to not return to the scene for an extended period of time thereafter, and to diverge from the agreed-upon manner in which to undertake recovery of ADT's property—all of which allegedly caused "property damage"—were grossly negligent and of such a severe nature as to warrant an award of punitive damages.

45. None of the allegations against Hutch's involves a chance event or event arising from unknown causes and, therefore, none of the "property damage" was caused by an "occurrence."

46. AAIC has no duty to defend or indemnify Hutch's in connection with the Underlying Lawsuit under the CGL coverage part on this basis.

## COUNT III – DECLARATORY RELIEF
**(The Care, Custody, or Control Exclusion Bars Coverage under the CGL Coverage Part)**

47. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

48. Exclusion j.(4) of Coverage A under the CGL coverage part states that the insurance does not apply, in relevant part, to "property damage" to "personal property in the care, custody or control of the insured."

49. According to the First Amended Complaint, ADT's principal authorized Hutch's to exercise the degree of control over ADT's tractor, trailer, and cargo necessary to physically remove it from the roadside to a place of safety, and Hutch's was the only entity so authorized.

50. ADT's tractor, trailer, and cargo all constitute personal property.

51. Hutch's exercised care, custody, and/or control over ADT's personal property when it pushed the disabled tractor and trailer down the embankment, which caused the spillage of cargo and damage to property.

52. Accordingly, even if the Underlying Lawsuit is construed as seeking damages because of "property damage" caused by an "occurrence," all such damages are excluded from coverage under the CGL coverage part pursuant to Exclusion j.(4) as set forth above.

## COUNT IV – DECLARATORY RELIEF
**(Other Coverage Issues)**

53. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

54. The AAIC Policy does not provide insurance coverage to Hutch's with respect to the allegations contained in the First Amended Complaint for the following additional reasons:

   a. There is no potential coverage obligation for any damages awarded against Hutch's based on "property damage" that occurred after the September 13, 2015 expiration of the AAIC Policy;

  b. The insurance under the CGL coverage part does not apply to any alleged "property damage" expected or intended from the standpoint of Hutch's;

  c. The CGL coverage part, by endorsement, states that the insurance under Coverage A does not apply to "[a]ny punitive damages, exemplary damages or multiplied portion of any award because of any 'property damage'"; and

  d. Coverage may otherwise be barred, in whole or in part, by the terms, exclusions, conditions, definitions, declarations, endorsements, and/or limitations contained in the AAIC Policy.

### COUNT V – DECLARATORY RELIEF
### (Recoupment of Defense Costs)

55. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

56. By letters dated October 4, 2017 and December 19, 2017, AAIC's third-party claims administrator advised Hutch's of AAIC's agreement to provide Hutch's with a defense in the Underlying Lawsuit subject to a reservation of rights.

57. Both letters expressly reserved AAIC's right to seek reimbursement of the costs incurred in connection with Hutch's defense in the Underlying Lawsuit.

58. AAIC has incurred, and will continue to incur, legal fees and expenses relating to the defense of the Underlying Lawsuit.

59. To the extent it is later determined that there is no coverage available to Hutch's under the AAIC Policy, AAIC is entitled to reimbursement of all costs and expenses incurred in AAIC's defense of Hutch's from October 4, 2017 going forward.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff American Alternative Insurance Corporation respectfully requests that this Court enter judgment in its favor, and against Hutch's Wrecker Service, LLC as follows:

(a) Declaring that AAIC owes no duty to defend or indemnify Hutch's under the AAIC Policy with respect to the Underlying Lawsuit;

(b) Declaring that AAIC is entitled to recoupment of defense costs and expenses incurred on behalf of Hutch's in the Underlying Lawsuit from October 4, 2017 going forward;

(c) Awarding AAIC its attorneys' fees, costs, and disbursements in prosecuting this action; and

(d) Granting AAIC any other and further such relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff AMERICAN ALTERNATIVE INSURANCE CORPORATION hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: February 15, 2018

Respectfully submitted,

/s/ Don C. A. Parker

Don C. A. Parker
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East
Post Office Box 273
Charleston, WV 25321-0273
Telephone: (304) 340-3896
Email: dparker@spilmanlaw.com

Jordon S. Steinway*
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Telephone: (312) 762-3169
Email: jsteinway@batescarey.com
*Pro Hac Vice admission pending

Counsel for American Alternative Insurance Corporation

13112.1890566